THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| LATOYA PHILLIPS <br> 10029 Fairglen Drive <br> Cincinnati, OH 45251 <br><br> Plaintiff, <br><br> v. <br><br> NORWOOD HIGHLANDS HEALTHCARE, LLC <br> d.b.a. HIGHLANDS POST ACUTE <br> 1578 Sherman Avenue <br> Norwood, OH 45212 <br><br> Defendant. | CASE NO. 1:22-cv-402 <br><br> JUDGE <br><br> MAGISTRATE JUDGE <br><br> **Jury Demand Endorsed Herein** |

## COMPLAINT

NOW COMES Plaintiff LaToya Phillips ("Plaintiff") and proffers this Complaint for damages against Norwood Highlands Healthcare ("Defendant").

## JURISDICTION AND VENUE

1. This action is brought pursuant to the Americans with Disabilities Act of 1990 as amended, 42 U.S.C. §12101, *et seq*. ("ADA"), the Ohio Laws of Discrimination, O.R.C. Chapter 4112 ("Chapter 4112"), and 28 U.S.C. §1331. This Court's jurisdiction in this matter is also predicated upon 28 U.S.C. §1367 as this Complaint raises claims pursuant to the laws of Ohio, over which this Court maintains supplemental subject matter jurisdiction.

2. Venue is proper pursuant to 28 U.S.C. §1391, because Plaintiff entered into an employment relationship with Defendant in the Southern District of Ohio, Plaintiff

performed her job duties there, and Defendant is doing and has done substantial business in the Southern District of Ohio.

3. Plaintiff has complied with all jurisdictional prerequisites to the filing of this lawsuit and this Complaint is filed within ninety (90) days of Plaintiff's receipt of her Right to Sue letter from the Equal Employment Opportunity Commission, a copy of which is attached hereto as "Exhibit A".

## THE PARTIES

4. Plaintiff is a natural person residing in Hamilton County, Ohio.

5. Defendant Norwood Highlands Healthcare, LLC is an Ohio limited liability company with its principal place of business in Norwood, Ohio.

6. Defendant conducts business in the Southern District of Ohio and employed Plaintiff in the Southern District of Ohio.

## FACTUAL BACKGROUND

7. Plaintiff began working for Defendant Norwood Highlands Healthcare on or about May 24, 2021.

8. Plaintiff was hired as the Director of Nursing.

9. Plaintiff's employment and disciplinary history is devoid of significant issues.

10. Plaintiff is diagnosed with a syncope condition.

11. On or around October 12, 2021, Plaintiff was admitted to the emergency room after a syncope episode. Plaintiff had two lesions on her brain and had to have fluid removed from her brain because of the episode. Plaintiff was hospitalized for nine days, during which time she was heavily medicated on Dilaudid.

12. On or around October 15, 2021, Plaintiff's manager, Sterling Smith, visited Plaintiff in the hospital and brought her the "on-call" phone so Plaintiff could answer calls while recovering in the hospital.

13. Plaintiff did not tell Mr. Smith that she could answer calls, nor did she disclose to him at which hospital she was staying.

14. Plaintiff was surprised by the October 15 demand but felt that she had no choice but to answer work calls during her recovery.

15. Plaintiff had not yet been released to return to work by her doctors, but she answered the "on-call" phone from October 15 to October 20, 2021. Performing work functions at this stage in her recovery from her syncope episode posed physical risk to Plaintiff.

16. On or around October 25, 2021, Plaintiff returned to work. Plaintiff had difficulty standing and getting up from her seat.

17. On or around October 25, 2021, Mr. Smith told plaintiff to work from home after observing her difficulties with standing and getting up from her seat.

18. On or around October 26, 2021, Plaintiff returned to work in a more stable condition and assured Mr. Smith that she was fit for work.

19. After Plaintiff's return to work on October 26, Plaintiff became aware of rumors circulating among employees that she had been faking her hospitalization.

20. Plaintiff overheard one employee say that they would be glad if Plaintiff was fired.

21. Plaintiff overheard her regional manager say that she didn't like Plaintiff.

22. Due to the circulating rumors and comments disparaging Plaintiff, Plaintiff felt that she was being discriminated against because of her hospitalization.

23. Plaintiff reported the harassment and discrimination she experienced in the workplace to the compliance hotline.

24. Approximately ninety minutes after Plaintiff's call to the compliance hotline, Mr. Smith texted Plaintiff to request a meeting to "catch up." In the meeting, Mr. Smith terminated Plaintiff, explaining that "with everything going on, I don't think you are a good fit." Aside from that remark, Mr. Smith did not provide a reason for Plaintiff's termination.

25. Since her termination, Defendant has accused her of grievously harming a patient – something she absolutely did not do. Plaintiff can prove that another employee was responsible for this patient and that she had nothing to do with the harm that befell this person. Defendant only offers this reason for termination as pretext for discrimination.

## COUNT I
### Disability Discrimination—Americans with Disabilities Act

26. All of the preceding paragraphs are realleged as if fully rewritten herein.

27. This claim is brought under federal law, pursuant to 42 U.S.C. § 12101, *et seq.*, and as defined in 42 U.S.C. § 12101.

28. Plaintiff is an otherwise qualified individual.

29. Defendant knew or had reason to know Plaintiff had suffered from a disability, and/or regarded her as disabled. Defendant was aware of Plaintiff's hospital stay and even visited her in the hospital.

30. Defendant was aware of the difficulties suffered by Plaintiff as a result of her disability. Defendant observed Plaintiff's difficulties standing and getting up from her seat immediately following her hospitalization. Plaintiff also reported to the compliance hotline that she was being harassed and discriminated against because of her disability and hospital stay.

31. Defendants discriminated against Plaintiff because of her disability by taking the following non-exhaustive list of actions: terminating her employment, retaliating against her, and/or by otherwise discriminating against her in the terms, privileges and conditions of employment. Specifically, Plaintiff was discriminated against due to her disability when she was expected to work during her hospital stay by answering the on-call phone, when rumors were circulated that she was faking her hospital stay, and when Defendant terminated Plaintiff when she reported the discrimination. Defendant also fabricated false allegations that Plaintiff had harmed a patient as a pretextual reason for her termination.

32. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits, and other terms, privileges, and conditions of employment for which the Defendant is liable.

33. Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages, and reasonable attorney's fees and costs.

## COUNT II
### Disability Discrimination – R.C. §4112.02

34. All of the preceding paragraphs are realleged as if fully rewritten herein.

35. At all times material herein, Plaintiff suffered from an impairment within the meaning of Section 4112.01(A)(16) of the Ohio Revised Code.

36. At all times material herein, Plaintiff was a qualified individual with a disability within the meaning of R.C. §4112.01(A)(13) of the Ohio Revised Code.

37. Defendants knew Plaintiff was disabled and/or regarded her as disabled. Defendant was aware of Plaintiff's hospital stay and even visited her in the hospital.

38. Defendants were aware of the difficulties suffered by Plaintiff as a result of her disability. Defendant observed Plaintiff's difficulties standing and getting up from her seat immediately following her hospitalization. Plaintiff also reported to the compliance hotline that she was being harassed and discriminated against because of her disability and hospital stay.

39. Defendant discriminated against Plaintiff because of her disability by taking the following non-exhaustive list of actions: terminating her employment, retaliating against her, and/or by otherwise discriminating against her in the terms, privileges and conditions of employment. Specifically, Plaintiff was discriminated against due to her disability when she was expected to work during her hospital stay by answering the on-call phone, when rumors were circulated that she was faking her hospital stay, and when Defendant terminated Plaintiff when she reported the discrimination. Defendant also fabricated false allegations that Plaintiff had harmed a patient as a pretextual reason for her termination.

40. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but

not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

41. Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages, and reasonable attorney's fees and costs.

## COUNT III
**Retaliation – Americans with Disabilities Act**

42. All of the preceding paragraphs are realleged as if fully rewritten herein.

43. Plaintiff engaged in a protected activity by reporting the harassment and discrimination based on a disability to her employer's compliance hotline.

44. Defendant knew Plaintiff engaged in a protected activity because Plaintiff made a report directly to Defendant's compliance hotline.

45. Once Plaintiff engaged in the aforementioned protected activity, Defendant purposefully retaliated against Plaintiff by taking the following non-exhaustive list of actions: terminating her employment, retaliating against her, and/or by otherwise discriminating against her in the terms, privileges, and conditions of employment. Specifically, Defendant terminated Plaintiff's employment approximately ninety minutes after she called the compliance hotline to report harassment and discrimination based on her disability. Defendant also fabricated false allegations that Plaintiff had harmed a patient as a pretextual reason for her termination.

46. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to pain and suffering, and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

47. Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages, and reasonable attorney's fees and costs.

## COUNT IV
### Retaliation – R.C. §4112.02

48. All of the preceding paragraphs are realleged as if fully rewritten herein.

49. Plaintiff engaged in a protected activity by reporting the harassment and discrimination based on a disability to her employer's compliance hotline.

50. Defendant knew Plaintiff engaged in a protected activity because Plaintiff made a report directly to Defendant's compliance hotline.

51. Once Plaintiff engaged in the aforementioned protected activity, Defendant purposefully retaliated against Plaintiff by taking the following non-exhaustive list of actions: terminating her employment, retaliating against her, and/or by otherwise discriminating against her in the terms, privileges, and conditions of employment. Specifically, Defendant terminated Plaintiff's employment approximately ninety minutes after she called the compliance hotline to report harassment and discrimination based on her disability. Defendant also fabricated false allegations that Plaintiff had harmed a patient as a pretextual reason for her termination.

52. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to pain and suffering, and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

53. Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages, and reasonable attorney's fees and costs.

WHEREFORE, Plaintiff demands:

For all Counts, monetary damages including back pay and benefits, statutory liquidated damages, expert witness fees and attorneys' fees and costs, and front pay, compensatory damages and punitive damages in an amount to be determined at trial, but in any event not less than $75,000.00 and any and all other relief, which the Court deems just and appropriate.

Respectfully submitted,

/s/ Rachel Sabo Friedmann, Esq.
Rachel Sabo Friedmann (0089226)
Peter G. Friedmann (0089293)
(Rachel@TheFriedmannFirm.com)
(Pete@TheFriedmannFirm.com)
**The Friedmann Firm LLC**
3740 Ridge Mill Dr.
Hilliard, Ohio 43026
(614) 610-9757: Phone
(614) 737-9812: Fax

## JURY DEMAND

Plaintiff hereby requests a jury of at least eight (8) persons.

/s/ Rachel Sabo Friedmann, Esq.
Rachel Sabo Friedmann (0089226)